DAVID B. SHANIES LAW OFFICE
411 Lafayette Street, Sixth Floor
New York, New York 10003
(212) 951-1710 (*Tel*)
(212) 951-1350 (*Fax*)
david@shanieslaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MALIK FRANCIS,<br><br>                        Plaintiff,<br><br>    — against —<br><br>THE CITY OF NEW YORK, ERIC SLIZEWSKI, DISHEM RAMNATH, and CHRISTOPHER McEWAN,<br><br>                      Defendants. | Case No. 17-CV-1583 (RJD) (LB)<br><br>**AMENDED COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Malik Francis files this Amended Complaint against the above-captioned Defendants and alleges as follows:

## NATURE OF THE ACTION

1. Mr. Francis brings this action under 42 U.S.C. § 1983 and New York State Law, seeking relief for injuries caused by the intentional acts and omissions, deliberate indifference, and/or negligence of correction officers employed by the New York City Department of Correction ("DOC") at the Brooklyn Detention Complex in September 2016.

2. In September 2016, the Individual Defendants – New York City Correction Officers – caused Mr. Francis to suffer serious physical injuries by allowing an armed inmate into the "Protective Custody" area where Mr. Francis was being housed

and failing to stop that inmate from slashing Mr. Francis, who was confined and defenseless, in the face with a sharp object.

3.   On or about September 20, 2016, Mr. Francis was an inmate in the custody of the DOC.

4.   In or about September 2016, Mr. Francis was transferred from Rikers Island to the Brooklyn Detention Complex.

5.   Mr. Francis had been assigned to "Protective Custody" because, *inter alia*, the DOC had specific information, received from the Kings County District Attorney's Office ("KCDA"), indicating that Mr. Francis was in physical danger.

6.   Because of the threat, the KCDA had sought and obtained a court order requiring that Mr. Francis be safeguarded in "Protective Custody."

7.   In fact, a few months before this incident, Mr. Francis, while in the DOC's custody, was slashed in the face by another inmate.

8.   Despite having prior notice of the threat against Mr. Francis, and despite the fact that Mr. Francis was the victim of a nearly identical slashing attack merely months prior to this one, the DOC, City of New York, and their employees and agents were deliberately indifferent, reckless, and/or negligent with respect to Mr. Francis' legal and constitutional rights, and failed to exercise reasonable care to protect him from the known threat.

9.   As a result, Mr. Francis suffered serious and permanent injuries.

10.   Defendants' actions were wanton, malicious, and done with deliberate indifference to Mr. Francis' safety and constitutional rights.

11.      Defendants' actions disregarded a known and foreseeable risk to

Mr. Francis' physical safety and caused him grave injuries that were entirely preventable.

## JURISDICTION AND VENUE

12.      This action arises under 42 U.S.C. §§ 1983 and 1988, and under

the laws of the State of New York.

13.      Jurisdiction lies in this Court under its federal question, civil rights,

and supplemental jurisdiction, 28 U.S.C. §§ 1331, 1343, and 1367.

14.      Venue is proper in this Court under 28 U.S.C. § 1391 because

Plaintiff's claims arose in the Eastern District of New York.

15.      Mr. Francis has complied with the requirements of New York

General Municipal Law ("GML") § 50-i by serving a notice of claim on the City of New

York Office of the Comptroller in November 2016.

## PARTIES

16.      Plaintiff Malik Francis is an individual residing in New York.  Mr.

Francis is currently incarcerated at the Robert N. Davoren Center on Rikers Island.  At

the time his claims in this action arose, Mr. Francis was incarcerated at the Brooklyn

Detention Complex ("Brooklyn House") in Brooklyn, New York.

17.      Defendant City of New York is a municipality and a political

subdivision of the State of New York, existing by virtue of the laws of the State of New

York.  Defendant City of New York is and was at all relevant times responsible for the

policies, customs, and practices of DOC and vicariously liable under state law for the

tortious acts and omissions of employees of DOC committed within the course of their

employment.

18.     Defendant Eric Slizewski was at all relevant times a Corrections Officer employed by the DOC, residing in New York, who was on duty and assigned to the "A Post" in the "Protective Custody" housing unit where Mr. Francis was incarcerated on the day he was attacked, on or about September 20, 2016, and who by his intentional acts and omissions, deliberate indifference, recklessness, and/or negligence proximately caused the attack on and injuries to Mr. Francis.

19.     Defendant Dishem Ramnath was at all relevant times a Corrections Officer employed by the DOC, residing in New York, who was on duty and assigned to the "B Post" in the "Protective Custody" housing unit where Mr. Francis was incarcerated on the day he was attacked, on or about September 20, 2016, and who by his intentional acts and omissions, deliberate indifference, recklessness, and/or negligence proximately caused the attack on and injuries to Mr. Francis.

20.     Defendant Christopher McEwan was at all relevant times a Corrections Officer employed by the DOC, residing in New York, who was on duty and assigned to supervise the "linen exchange" within the housing unit where Mr. Francis was incarcerated on the day he was attacked, on or about September 20, 2016, and who by his intentional acts and omissions, deliberate indifference, recklessness, and/or negligence proximately caused the attack on and injuries to Mr. Francis.

21.     Defendants Slizewski, Ramnath, and McEwan are collectively referred to at times as the "CO Defendants."

## GENERAL ALLEGATIONS

22.     At all times during 2016, Mr. Francis was committed to the custody of DOC.

4

23.     In or about April 2016, the KCDA contacted both the DOC and Mr. Francis' criminal defense attorney and informed them of a specific and credible threat of physical harm against Mr. Francis by other inmates.

24.     The KCDA applied for and obtained, in the Supreme Court of the State of New York (Kings County), a court order directing that Mr. Francis be housed in protective custody.

25.     The DOC and Defendants were informed and on notice of the court order.

26.     It is the DOC's stated policy to "maintain protective custody housing units to provide for [the] safety" of "vulnerable inmates" who "cannot be safely housed in a less restrictive setting in the general population."

27.     The DOC's written policy on Protective Custody, Departmental Directive 6007R-A, recognizes that "[i]nmates assigned to protective custody are those inmates whom the Department has determined to be at risk from other inmates." *See* Directive 6007R-A (*available at http://www.nyc.gov/html/doc/downloads/pdf/6007R-A.pdf* ) ("PC Policy"), Section V(A).

28.     Initially, Mr. Francis was transferred to protective custody.

29.     Weeks later – on or about April 24, 2016 – Mr. Francis was removed from protective custody, and within hours he was attacked and viciously slashed by an inmate.

30.     That incident further confirmed the seriousness of the threat to Mr. Francis' physical safety.

31.     Mr. Francis was placed back in protective custody.

32.     In or about September 2016, Mr. Francis was transferred from Rikers Island to the Brooklyn House.

33.     The DOC's formal policy on Protective Custody requires that "inmates in protective custody shall be kept separate *at all times* from all other inmates not assigned to protective custody."  *See* PC Policy, Section V(F) (emphasis added).

34.     On or about September 20, 2016, Mr. Francis was in a Protective Custody housing unit within the Brooklyn House.

35.     That day, Defendants Slizewski and Ramnath were assigned to security posts within Mr. Francis' Protective Custody housing unit, and were responsible for ensuring security and inmates' safety.

36.     The CO Defendants permitted one or more inmates from outside the Protective Custody housing unit to enter the Protective Custody unit.

37.     Said inmates were affiliated with a "linen exchange" program, which Defendant McEwan was assigned to supervise.

38.     The CO Defendants did not search the inmate(s) for weapons.

39.     Such a search was required under formal DOC policies, including Directive 4508 ("Control of and Search for Contraband").

40.     The CO Defendants permitted the inmate(s) to approach Mr. Francis' cell.

41.     The DOC's formal policy on Protective Custody requires that "[s]taff assigned to supervise … protective custody inmates must be continually vigilant of both the protective custody inmates' actions and the actions of other inmates who may

gain access to areas in which staff is escorting or transporting protective custody inmates." *See* PC Policy, Section V(H).

42.     The CO Defendants did not monitor Mr. Francis or the inmate(s) whom they permitted to approach Mr. Francis' cell.

43.     An inmate reached into Mr. Francis' cell and slashed his face with a sharp object.

44.     As a result, Mr. Francis sustained serious and permanent injuries.

45.     The CO Defendants' acts and omissions directly and proximately caused Mr. Francis' physical injuries, including bleeding, swelling, scarring, substantial pain, and permanent disfigurement.

46.     The CO Defendants' acts and omissions directly and proximately caused Mr. Francis mental, psychological, and emotional suffering, including anxiety, sleep disorders, depression, and post-traumatic stress.

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983, Fourteenth Amendment to the United States Constitution

*Against Defendants Slizewski, Ramnath, and McEwan*

47.     Mr. Francis repeats and realleges the foregoing paragraphs as if fully set forth herein.

48.     The CO Defendants were at all relevant times Correction Officers responsible for the custody and care of Mr. Francis.

49.     The CO Defendants knew, were deliberately indifferent to, and/or recklessly disregarded the fact that that Mr. Francis faced a substantial risk of serious harm through an attack by other inmates.

50.     The acts and omissions of the CO Defendants – including: (a) allowing one or more inmates from outside the Protective Custody housing area to enter the Protective Custody area, (b) failing to search the inmate(s) for weapons, (c) allowing the inmate(s) to approach Mr. Francis' cell, and (d) failing to monitor Mr. Francis and the inmate(s) whom they permitted to approach his cell – were deliberately indifferent to a known and substantial risk of serious injury to Mr. Francis.

51.     The aforesaid deliberate indifference and acts and omissions of the CO Defendants caused Mr. Francis to suffer the injuries described above, in violation of his rights under the Fourteenth Amendments to the United States Constitution.

SECOND CAUSE OF ACTION

Negligence (Under New York State Law)

*Against All Defendants*

52.     Mr. Francis repeats and realleges the foregoing paragraphs as if fully set forth herein.

53.     The City and its Correction Officers, having assumed custody of inmates, who cannot protect and defend themselves, owe a duty of care to safeguard inmates, including from attacks by fellow inmates where the risk of attack is reasonably foreseeable.

54.     At all relevant times, Defendants had custody of Mr. Francis.

55.     At all relevant times, Defendants were aware and on notice that: (a) Mr. Francis faced a specific risk of harm by fellow inmates; (b) the KCDA had identified a specific and credible threat of harm to Mr. Francis; (c) the Supreme Court of the State of New York (Kings County) had ordered that Mr. Francis be held in protective

custody; and (d) Mr. Francis had recently been attacked by other inmates, sustaining serious injuries.

56.     Defendants knew, or in the exercise of reasonable care should have known, that permitting other inmates to enter the Protective Custody housing area and to approach Mr. Francis' cell posed a substantial risk of harm to Mr. Francis through an attack by one or more other inmates.

57.     Defendants knew, or in the exercise of reasonable care should have known, that failing to conduct a search for weapons on the inmates whom they permitted to approach Mr. Francis' cell and failing to monitor Mr. Francis and those inmates posed a substantial risk of harm to Mr. Francis through an attack by one or more other inmates.

58.     Defendants' acts and omissions proximately caused one or more armed inmates to approach Mr. Francis, who was confined and helpless, where the foreseeable risk of assault quickly materialized.

WHEREFORE, Plaintiff Malik Francis demands judgment against the above-captioned Defendants as follows:

a.     For compensatory damages in an amount to be determined at trial, but not less than three hundred thousand dollars;

b.     For punitive damages against the individual defendants in an amount to be determined at trial;

c.     For reasonable attorneys' fees, costs, and disbursements, under 42 U.S.C. §1988 and other applicable laws;

d.     For pre- and post-judgment interest as allowed by law; and

e.     For such other relief as this Court deems just and proper.

Dated: August 30, 2017
       New York, New York

DAVID B. SHANIES LAW OFFICE

By: _____

David B. Shanies
411 Lafayette Street, Sixth Floor
New York, New York 10003
(212) 951-1710 (*Tel*)
(212) 951-1350 (*Fax*)
david@shanieslaw.com

*Counsel for Plaintiff Malik Francis*